# CHARLESTON.

MINEAR et al. v. TUCKER COUNTY COURT.

Submitted September 13, 1894.—Decided December 15, 1894.

1. COUNTY-SEAT—RE-LOCATION.
    Where on petition to the County Court by the requisite number of legal voters an election has been ordered and held to determine

the question of re-locating the county seat under section 15 of chapter 39 of the Code, and the County Court has ascertained its result and declared, that three fifths of the votes cast are in favor of re-location at a particular place and has entered the fact in its record-book, this place is from the date of said declaration by operation of law the county-seat.

2. ELECTIONS.

The return of a poll by commissioners of an election is *prima facie* the true result of the election and will not be reversed by this Court because of misconduct on the part of the election-officers or other persons, unless it plainly appears that such misconduct changed the result of the election.

3. ELECTIONS.

It is not necessary, that it should appear affirmatively on the record, that all the directions of the statute in reference to posting a copy of the order directing the election to be held at each and every precinct in the county or as to publishing a copy of such order in a newspaper *etc.*, have been complied with. If it appears, that the County Court with the poll-books, tally sheets and certificates of election from the various precincts before it has canvassed the returns and declared the result, it will be presumed to have acted rightly, unless the contrary is made to appear.

4. ELECTIONS.

Where the commissioners of a county meet as a canvassing board five days after an election for the sole purpose of declaring the result of said election, counting the vote *etc.*, no notice as to the object of said meeting is required to be posted, as is necessary when special sessions are to be held for other purposes.

A. B. PARSONS for plaintiffs in error cited Code, c. 39, s. 6, 15; Const. Art. VI, s. 39; 75 Mo. 340; 21 Ohio St. 11; 7 Laws R. and Rem. § 3758, 3760; Am. Dig. 803, 806; 50 N. W. Rep. 720; 29 Kan. 565; 3 W. Va. 588; 6 W. Va. 74, 612, 640, 720; 25 W. Va. 324; 27 Stim. 604; Stim. Am. Stat. L. § 301; 25 Neb. 674; 20 Tex. 782; 73 Am. Dec. 213; 66 Mo. 442; 29 W. Va. 63; 11 Cal. 49; 27 W. Va. 244; 18 S. E. Rep. 8; Code, c. 3, s. 67; Cool. Const. Lim. 603.

A. JAY VALENTINE, J. P. SCOTT, A. M. CUNNINGHAM *and* A. G. DAYTON, for defendant in error:

I.—*Sufficiency of petition—Date.*—Code (1891) c. 39, s. 15; 28 W. Va. 181, 182.

II.—*Number of petitioners—Court will take judicial notice of number required.*—29 W. Va. 63; 45 N. W. 854; 54 Ia. 340.

III.—*Irregularities will not defeat the popular will.*—6 W. Va. 613 ; 23 Tex. App. 77 ; 85 Ky. 597.

IV.—*Separate certificate of return.*—Code (1891) c. 39, s. 15.

V.—*Special law, statutes, titles, etc.*—1 Tuck. Comm. (Ed. 1846) 11 ; 22 Am. & Eng. Ency. Law 904, note 2 ; 29 W. Va. 87 ; 18 S. E. Rep. 470 ; Const. Art. VI., sec. 30 ; 37 W. Va. 811 ; 7 L. A. R. ; 107 U. S. 147.

VI.—*Failure of officers to be sworn, etc.*—6 W. Va. 613 ; 29 W. Va. 89 ; 12 Cal. 352 ; 29 Ill. 54 ; 10 Ia. (With) 212.

VII.—*Regularity of election is presumed.*—6 W. Va 613 ; 29 W. Va. 63 ; 6 Am. & Eng. Ency. Law 326 ; 19 S. E. Rep. 557.

VIII.—*Sufficiency of notice of special session*—Code (1891) c. 13, s. 13 ; 21 W. Va. 777.

IX.—*Court house not a vested right.*—29 W. Va. 63 ; 4 Greene (Iowa) 60.

ENGLISH, JUDGE :

This writ of error was awarded on the petition of A. C. Minear and others to an order made in vacation by the judge of the Third judicial circuit on the 26th day of July, 1893, refusing to award a writ of *certiorari* against the County Court of Tucker county requiring it to *remove* the record of the proceedings in relation to the re-location of the county-seat of said county at Parsons, as specified in the petition, and to produce the same before the Circuit Court of said county, and to abide by and perform any order of said court, that might be made in relation thereto. The only error assigned and relied on by the plaintiffs in error is the refusal of said judge to award said writ of *certiorari*.

It appears from the record of the proceedings of said County Court, which was presented with the petition for said writ of *certiorari* to said judge in vacation, that at a regular session of the County Court of said county of Tucker held on the 4th day of January, 1893, petitions were filed by J. S. Heaton, A. H. Bonnifield, Joseph Fauley, A. J. Valentine, J. W. Runner, J. W. Johnston, C. L. Griffith and six hundred and sixty three other citizens and legal voters of the county of Tucker and state of West Virginia,

desiring the re-location of the county seat to be at the town of Parsons in said county, said petitions being severally verified by the affidavits of Ward Parsons that he verily believed that all the subscribers to said petitions were legal voters of said county, and it appearing that two fifths and upwards of all the legal voters of said county, as estimated by allowing one vote for every six persons in said county as shown by the last census of said county, it was ordered that a vote be taken upon the question of the proposed re-location at Parsons, Tucker county W. Va., at a special election to be held on the 28th day of April, 1893, and provided for the copies of the order being certified to the respective voting places in said county by the clerk, and for posting one of said copies at each of said places of voting at least forty days before the election, and that a copy of said order be published in some newspaper printed in said county once in each week for four successive weeks before said special election; also providing what words should be written or printed on the ballots used at said election, and also providing that said vote should be taken superintended conducted and returned to the clerk of the County Court within the same time that they are required by law to deliver the result of the election of officers, and that said clerk should lay the same before the County Court at its next session thereafter; and that the said court should thereupon ascertain and declare the result of said vote, and enter the same of record. In compliance with said petitions said County Court fixed and ordered a special election to be held on the 28th day of April, 1893, upon the question of the re-location of the said county-seat, proper bond in the penalty of five thousand dollars having been given and acknowledged by the proper parties conditioned to pay all the legal costs of holding said election as required by law.

At a special session of the County Court of said county, held on the 4th day of May, 1893, the vote on said election was canvassed, and, it appearing to the court that three fifths and upwards of all the legal voters of said county of Tucker were cast in favor of removal of county-seat from St. George to Parsons, it was therefore declared carried, whereupon A. C. Minear tendered a bill of exceptions to

the action of the County Court in declaring the result of said election : (1) because the act of the legislature of West Virginia (section 15 of chapter 39 of the Code of 1891) is unconstitutional and void ; that the legislature had no right to authorize a special election to be held for the purpose of re-locating any county-seat; that the said act is clearly and unquestionably against the spirit and intent of section 39, Art. VI, of the Constitution of the state of West Virginia ; —(2) because the ballots received from the commissioners holding the said election at the following places, to wit: Precinct No. 1 in Black Fork district, where there were two hundred and sixty three votes cast for removal, and precinct No. 1, Fairfax district, where there were one hundred and ninety nine votes cast for removal of said county-seat to the town of Parsons, and precinct No. 2 in Dry Fork district, where there were twenty one votes cast for the removal of said county-seat to the town of Parsons—were not endorsed across the seal of the envelope or package containing the said ballots by the said commissioners of election at said voting places, as required by section 67 of chapter 3 of the Code ;—(3) because the commissioners of election and clerks at precinct No. 2 in Black Fork district were not sworn as required by section 11, c. 3, of the Code ; —(4) because the clerk of the Circuit Court of said county failed to have published in two newspapers within the county the question to be voted on at said election for ten days before said election ;—(5) because no place was designated in the notice given by the court for holding the election in Black Fork district at precinct No. 1; that the same was left blank ;—(6) because the notice as required by section 6 of chapter 39 of the Code for holding special sessions of the County Court was not posted the two days before the said session of court as required by law.

The errors in the action of the County Court relied upon in the petition for the *certiorari* were, first, that the petition for the re-location of the county-seat was not presented till the 4th day of January, 1893, and that said petition or petitions were gotten in the year 1892, and were informal and insufficient for the said court to order the said special election ; but, as one of said petitions appears

to have been signed the 31st day of December, 1892—only four days before it was presented—and as this portion of the assignment is not insisted on in argument, my conclusion is that it is not seriously relied upon. It is, however, insisted that the petitions do not conform to the statute, in that they do not conclude with a prayer that the County Court should make an order, that a vote should be taken at a special election to be held in the county upon the question of the re-location of the county-seat at the place named in said petition. By referring to the petition, however, we see that the petition was addressed to the County Court of Tucker county, and is as follows: " We, the undersigned, citizens and legal voters of Tucker county, West Virginia, do most respectfully petition your honorable body for a re-location of the county seat of said county at the town of Parsons, in said county, and to this end we ask that your honorable body fix a day for, and order the holding of, a special election upon the question of such re-location, in accordance with the provisions of section 15 of chapter 39 of the Code of West Virginia." This petition was signed by two fifths of the legal voters of said county, as appears by the affidavit of Ward Parsons appended thereto and by the order of the County Court entered, when the same was filed. We think it conforms to the statute and must be regarded as sufficient.

The third assignment of error is: "Because the clerk of said court did not, as required by law, so far as the record shows, certify any copy of the said order directing the said vote on said question to be taken, as petitioners were informed; nor were the copies of said order posted by the sheriff for forty days, as the said order required; and because the record nowhere shows that said order, as the same required, was printed for four successive weeks in some newspaper printed in Tucker county."

Now, while the record does not show affirmatively that the order directing said vote on said question was posted and published as directed by the statute, yet it does appear by an order entered by the County Court of said county on the 23rd day of May, 1893, that at the special election held on the 28th day of April, 1893, upon the ques-

tion of the re-location of the county seat of Tucker county, the legal cost of conducting, superintending, advertising, certifying, and declaring the result of said election amounted to the sum of three hundred and fifty seven dollars and ninety cents, as ascertained by the court; so it appears that a considerable expense was created in advertising, conducting, superintending, certifying and declaring the result, which was audited by the court; and in the order immediately following, which was entered on the 10th day of July, 1893, that it appeared to the court from the order made on the 4th day of May, 1893, at a special session of said court, at which session it canvassed, ascertained and declared the result of the vote of the special election held on the 28th day of April, 1893, on the question of re-location of the county-seat at the town. of Parsons for the county of Tucker, and it appearing to the court that three fifths and upwards of all the legal votes of said county cast at said election were cast in favor of removal of the county-seat from St. George to Parsons, it was therefore declared carried. And when we refer to said order of the 4th of May, 1893, we find that it appears on the face of said order that "the clerk in whose custody the ballots, poll-books, tally-sheets, and certificates of the special election held on the 28th day of April were placed, on that day filed the same before the court for examination, and the court, in compliance with section 68 of chapter 3 of the Code proceeded to count the ballots, giving the number of ballots cast at each precinct, declaring the number of votes cast for re-location and against re-location of the county-seat, and ascertained that three fifths and upwards of all the legal votes of said county of Tucker were cast in favor of removal of the county-seat from St. George to Parsons, and that it was therefore declared carried."

Now, in the case of *Hamilton* v. *Court*, 38 W. Va. 74 (18 S. E. Rep. 8) BRANNON, Judge, delivering the opinion of the Court, says: " Now, when such an election has been held, and the County Court has ascertained its result, and declared that three fifths of the votes cast are in favor of re-location at a particular place, and entered the fact in its record book, this place is, from the date of said declara-

tion, by operation of law, the county-seat. It is the duty of the County Court to expressly declare it the county-seat, but that is directory in the statute, and if it has declared the result of the election, and that the requisite three fifths vote is in favor of re-location at a particular place that alone in law removes the county-seat to the new place; otherwise the popular will would be defeated. The statute plainly means that if three fifths of the voters vote for the re-location, and it be so found and declared, and entered by the County Court from that date, the date of such declaration, the new point is the county-seat. In one clause the statute provides for the ascertainment by the County Court whether a three fifths vote has been cast for re-location, and by another clause it enacts that, if such vote has been cast, the place receiving such vote shall thenceforth be the county-seat. It is the vote when so ascertained to be a three fifths vote that works the change. All else is directory or ministerial."

It is not necessary, that it should appear affirmatively on the record, that all the directions of the statute in reference to posting a copy of the order directing the election to be held at each and every precinct in the county, or as to publishing a copy of such order in a newspaper, *etc.*, have been complied with. If it appears that the County Court, with the poll-book, tally-sheets and certificates of election from the various precincts before it, has canvassed the returns and declared the result, it will be presumed to have acted rightly, unless the contrary is made to appear.

This Court held in the case of *Dial* v. *Hollingsworth*, *supra*, p. 1 (19 S. E. Rep. 557) that the return of a poll by the commissioners of election is *prima facie* the true result of the election, and will not be reversed by this Court because of misconduct on the part of the election officers or other persons, unless it plainly appears that such misconduct changed the result of the election.

Although A. C. Minear, a citizen and taxpayer, on behalf of himself and all other citizens and taxpayers of said county objected to the said Court certifying and declaring the result of said election, and that a majority of said votes so cast be counted, and asked that the same be rejected

upon the grounds hereinbefore stated as set out in said bill
of exceptions, yet there was no proof in the cause to sus-
tain the grounds set forth in said bill of exceptions, and
hence we hold that said assignment of error was not well
taken.

The fourth assignment of error is: "Because the
commisssioners of election did not make out and sign and
return separate certificates of the result of said election."
The answer to this assignment of error is that the vote
upon this question was not taken at a general but at
a special election held for the sole purpose of ascertaining
the will of the voters of said county upon the single iso-
lated question, as to whether the county-seat of said coun-
ty should be re-located; and, this being the only result to
be declared or ascertained by the election, there was no
other result to certify, and for that reason the certificate
was a separate certificate of the result.

It is next contended and assigned as error, that the ac-
tion of the County Court was unwarranted, because the
act of the legislature of West Virginia (section 15 of chap-
ter 39 of the Code of 1891) is unconstitutional and void,
and that the said act is contrary to and against the spirit
and intent of section 39 of Article VI of the Constitution
of this state, and because the object and purpose of said
act of the legislature were not expressed in the title to said
bill, as required by the constitution, and it is therefore void
for that reason.

Is said section unconstitutional and void because con-
trary to and against the spirit and intent of section 39 of
Article VI of the Constitution of this state, which provides
that the legislature shall not pass local or special laws in
any of the following enumerated cases—that is to say,
among others, "locating or changing county-seats?" Now,
this proceeding was not under any special law but under a
law, which would have to be brought into requisition and
proceeded under in any county in the state, in which an
attempt was made to re-locate the county-seat.

Anderson in his Dictionary of Law "Judicial Defini-
tions," *etc.* says under the word "Statute": "A general or
public statute; an universal rule that regards the whole

community.　Local statute applies to citizens of a part of the state, *etc*.　Special or private statute : This is rather an exception than a rule, being that which operates only upon particular persons and private concerns." See 1 Tuck. Comm. p, 11.

This question was discussed by Green, J., in the case of *Welch* v. *County Court*, 29 W. Va. 87 (1 S. E. Rep. 337). He quotes from section 15 of chapter 39 : "Whenever the citizens of any county desire the re-location of their county-seat, they may file a petition," *etc*.　The section then prescribes the details of the manner in which a county-seat may be re-located by a vote of the people of the county, and says: "This language is as broad and comprehensive as it can well be, and its terms apply to all counties." There can be no question then but that this statute must be considered general, and not special.

It is also contended that this act. is unconstitutional and void, because the object and purpose of said act of the legislature was not expressed in the title to the said bill as required by the constitution.　When we turn to the title of the bill, we find it reads as follows:—"Concerning the County Courts, their jurisdiction and power ;" and, referring to said section 15, we find it provides for the jurisdiction and powers of the County Court in reference to directing an election, when a proper petition is presented to it praying a re-location of the county-seat ; so that we must hold that the object and purpose of said act was expressed in said bill as required by the constitution.　On this point, see a decision of the Supreme Court of Pennsylvania reported in 18 Atl. 993 (Appeal of Borough of Millvale) where it is held :—"If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary ; it need not be an index to its contents."

The sixth assignment of error is, that the ballots received from the commissioners holding the election in certain places, where majorities were given for removal, were not indorsed across the seal of the envelope or package containing the said ballots by the commissioner of election at said voting places, and because the commissioners of elec-

tion and clerk at precinct No. 2, Black Fork district, were not sworn as required by section 11 of chapter 3 of the Code; also because the said election was not conducted as provided in the order of January 4, 1893, at the regular term of the court, or as provided by the general law (Code, c. 3) known as the "Australian Ballot System."

The answer to these objections assigned as error is, that no such facts are disclosed by the record, and there is no proof, that such defects in the proceedings exist, and for the same reason there is nothing before the Court to enable us to pass upon the questions raised by the seventh and eighth assignments of error as to publishing notice in two newspapers within the county of the question to be voted on at the said election, and as to whether any place was designated in the notice given by the court for holding the election in Black Fork district, in precinct No. 1, or in any of the other districts in Tucker county.

The ninth assignment of error is claimed to consist in the fact, that the notice required by section 6 of chapter 39 of the Code for special sessions of the County Court was not posted for two days before the said session of court, as required by law, and because the order entered on the 4th day of May, 1893, at the special session does not state the purpose for which said special session in obedience to said notice was called. This we do not regard as necessary, for the reason that under section 68 of chapter 3 of the Code it is provided that commissioners of the county shall be *ex officio* a board of canvassers. They shall convene as such canvassing board at the court-house on the fifth day (Sundays excepted) after every election held in their county or in any district thereof, and the officers, in whose custody the ballots, poll books, *etc.*, have been placed, shall lay the same before them for examination, *etc.* The statute requires, that they shall meet as a canvassing board on the fifth day, *etc.*, and no notice is required, as when they meet in special term to transact other business.

The tenth and last assignment of error is, that the court-house of said county was located on the lands of Enoch Minear, on the east side of Cheat river, by an act of the legislature of the state of Virginia passed March 7, 1856,

and that the present county-seat at St. George was located on its present site by agreement of proper parties to the contract between the County Court by its commissioners and the people, who by said contract and act agreed, that the said county-seat should be permanently located at St. George, the present site. Now, if this error could be sustained, no county-seat could be re-located under the statute, for the reason that all of them have been located by act of the legislature, and uniformly the site for the court-house building is fixed by agreement between the County Court and the owners of the land; and again, in this instance, the majority of the voters of Tucker county seem to have determined, that they want the court-house located now at Parsons, and, if it depended upon the voice of the people, it has been properly located by their votes.

For these reasons my conclusion is, that the judge of the Third judicial circuit committed no error in refusing to award said writ of *certiorari;* and the order complained of must be affirmed with costs and damages.